IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

BERNARD L. THOMPSON,

        Plaintiff,

v.                           //   CIVIL ACTION NO. 5:14CV127
                                  (Judge Keeley)


QUALITY CARRIERS, INC., CHEMICAL
LEAMAN TANK LINES, INC., UNION
CARBIDE CORP., E.I. DUPONT DE
NEMOURS AND CO., MONSANTO CO.,
FMC CORP., HONEYWELL INT'L INC.,
and HOWARD MAX GALLOWAY,

        Defendants.


MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 32] AND GRANTING MOTION TO DISMISS [DKT. NO. 9]

Pending before the Court are the motion to remand filed by the
plaintiff, Bernard L. Thompson ("Thompson") (Dkt. No. 32), and the
motion to dismiss filed by the defendant, Howard Max Galloway
("Galloway") (Dkt. No. 9).  For the reasons that follow, the Court
**DENIES** the motion to remand (Dkt. No. 32), **GRANTS** the motion to
dismiss (Dkt. No. 9), and **DISMISSES** Galloway.

BACKGROUND

Thompson worked for defendant Chemical Leaman Tank Lines
("Chemical Leaman") as a tank truck driver from the early 1960s
until 1989.[1]  In his capacity as a tank truck driver, Thompson

_____

        [1] Defendant Quality Carriers, Inc. is the successor-in-
interest to Chemical Leaman (Dkt. No. 1-3 at 8).

transported and was allegedly exposed to benzene and chlorobenzene, among other harmful chemicals, at the Chemical Leaman facility in Institute, West Virginia, as well as at other facilities owned by the co-defendants.

Thompson transported chemicals from Chemical Leaman's place of business to the facilities of defendant Union Carbide Corporation ("Union Carbide") in Institute and South Charleston, West Virginia; of defendant E.I. du Pont de Nemours and Co. ("DuPont") in Belle, West Virginia; of defendant FMC Corporation ("FMC") in South Charleston, West Virginia; of defendant Honeywell International f/k/a AlliedSignal, Inc. ("Honeywell") in Nitro and Moundsville, West Virginia; and, of defendant Monsanto Company ("Monsanto") in Nitro, West Virginia.

Galloway was the Superintendent of Environmental Health, Safety and Product Acceptability at Monsanto's Nitro, West Virginia, plant from 1977 until his retirement in 1985. In Count Four, Thompson alleges that Galloway negligently caused Thompson's exposure to impermissibly high and chronic levels of benzene, and negligently failed to provide adequate respiratory or other protective equipment. As a result, Thompson alleges that he

developed anemia and myelofibrosis, and has suffered severe illness and incurred medical expenses as a consequence.

On August 8, 2014, Thompson filed suit in the Circuit Court of Marshall County, West Virginia (Dkt. No. 1-3). On September 19, 2014,[2] Monsanto removed the case to this Court, invoking its diversity jurisdiction. Monsanto claimed that all corporate defendants were diverse from Thompson, who resides in West Virginia (Dkt. No. 1 at 3-4). Although Galloway is a citizen of West Virginia, Monsanto's removal papers alleged that had been fraudulently joined as a party in order to defeat diversity. Id. at 4.

On September 26, 2014, Galloway filed a motion to dismiss, claiming he owed no duty to Thompson because he was not responsible for the safety of third parties delivering materials to the Monsanto plant, and asserting that such responsibility belonged to another Superintendent (Dkt. No. 9). In his response to that motion, Thompson asserted that Galloway owed him a common law duty of care because he had affirmatively created an unreasonable risk of harm by exposing him to benzene vapors (Dkt. No. 30 at 3-4). Galloway's reply argued that the only duties he could possibly have

---

[2] Monsanto's notice of removal was timely because it was not served with the complaint until August 19, 2014 (Dkt. No. 1 at 2).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 32] AND GRANTING MOTION TO DISMISS [DKT. NO. 9]**

owed to Thompson stemmed from Galloway's job duties, which expressly excluded the safety of third parties (Dkt. No. 31 at 2).

On October 17, 2014, while the motion to dismiss was still pending,[3] Thompson filed a motion to remand the case to state court (Dkt. No. 32). Monsanto opposed the motion, again relying on this Court's diversity jurisdiction and its argument that Galloway had been fraudulently joined (Dkt. No. 34). Later, on December 12, 2014, pursuant to an order of the Court, Thompson provided a more definite statement of the factual basis of his claims against Galloway (Dkt. No. 38). All motions are now fully briefed and ready for disposition.

**LEGAL STANDARD**

When an action is removed from state court, a federal district court must determine whether it has original jurisdiction over the plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. Of Am., 511 U.S. 375, 377, 114 S.Ct. 1673 (1994). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." Id.

---

[3] It is generally improper for the Court to decide a Rule 12(b)(6) motion before ruling on a pending motion to remand. Stafford EMS, Inc. v. J.B. Hunt Transport., Inc., 270 F.Supp.2d 773, 774 (S.D.W. Va. 2003).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 32] AND GRANTING MOTION TO DISMISS [DKT. NO. 9]**

Federal courts have original jurisdiction over primarily two types of cases, (1) those involving federal questions under 28 U.S.C. § 1331, and (2) those involving diversity of citizenship under 28 U.S.C. § 1332. When a party seeks to remove a case based on diversity of citizenship, that party bears the burden of establishing "the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states." 28 U.S.C. § 1332. Courts should resolve any doubt "about the propriety of removal in favor of retained state court jurisdiction." <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d 229, 232-33 (4th Cir. 1993).

The doctrine of fraudulent joinder is a narrow exception to the complete diversity requirement. <u>Jackson v. Allstate Ins. Co.</u>, 132 F.Supp.2d 432, 433 (N.D.W. Va. 2000). If the doctrine applies, the Court can exercise removal jurisdiction even though a non-diverse party is a defendant. <u>Id.</u> (citing <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999)). The Court can disregard the citizenship of and dismiss the non-diverse defendant, thereby retaining jurisdiction over the case. <u>Mayes</u>, 198 F.3d at 461.

The removing party bears the "heavy burden of showing that there is no possibility of establishing a cause of action against

[a] non-diverse party" by clear and convincing evidence. Jackson, 132 F.Supp.2d at 433 (citing Hartley v. CSX Transp. Inc., 187 F.3d 422, 424 (4th Cir. 1999)); Clutter v. Consolidation Coal Co., 2014 WL 1479199 at *4 (N.D.W. Va. Apr. 15, 2014).  In the alternative, the removing party can establish that "there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Pritt v. Republican Nat. Committee, 1 F.Supp.2d 590, 592 (S.D.W. Va. 1998).  "[F]raudulent joinder claims are subject to a rather black-and-white analysis in this circuit.  Any shades of gray are resolved in favor of remand." Adkins v. Consolidation Coal Co., 856 F.Supp.2d 817, 820 (S.D.W. Va. 2012).

The Court must resolve all issues of fact and law in the plaintiff's favor, but, in doing so, "is not bound by the allegations of the pleadings." Marshall, 6 F.3d at 232-33; AIDS Counseling and Testing Centers v. Group W Television, Inc., 903 F.3d 1000, 1004 (4th Cir. 1990).  Instead, the Court can consider "the entire record, and determine the basis of joinder by any means available." AIDS Counseling, 903 F.3d at 1004 (quoting Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)).  The standard for fraudulent joinder is more favorable to the plaintiff

than the standard for a Rule 12(b)(6) motion to dismiss.  Mayes,
198 F.3d at 464.

## ANALYSIS

As an initial matter, Thompson is not precluded from suing
Galloway by any form of statutory immunity.  Musgrove v. Hickory
Inn, Inc., Syl. Pt. 3, 281 S.E.2d 499, 500-501 (W. Va. 1981)
(quoting State ex rel. Bumgarner v. Sims, 79 S.E.2d 277 (1953))
("In this jurisdiction a joint action of tort may be instituted
against a master and servant in a case in which plaintiff's
injuries were occasioned solely by the negligence of the servant.
. . .").  Thompson was a contract truck driver employed by Chemical
Leaman, whereas Galloway was employed by Monsanto.  Therefore, the
West Virginia Workers' Compensation Act scheme is not in effect.[4]
W. Va. Code § 23-2-1a.  The Court must "simply appl[y] traditional
principles of tort and agency law to hold both [the individual
employee] and his employer liable for [his] bad behavior. . . ."

_____

[4] Had Galloway and Thompson both worked for the same company,
the result would be different, as co-employees are subject to the
same immunity as employers under the Act.  See Evans v. CDX
Services, LLC, 528 F.Supp.2d 599, 604 (S.D.W. Va. 2007)
("[E]mployees acting in furtherance of their employer's business
are entitled to immunity so long as they do not  injure a co-
employee with deliberate intention."); Williams v. Harsco Corp.,
2011 WL 3035272 at *2-3 (N.D.W. Va. July 22, 2011)(finding that co-
employees enjoy identical immunity as that enjoyed by the
employer).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 32] AND GRANTING MOTION TO DISMISS [DKT. NO. 9]**

Grubbs v. Westfield Ins. Co., 430 F.Supp.2d 563, 569 (N.D.W. Va. 2006).

Additionally, Monsanto's allegation that Thompson joined Galloway solely to defeat federal jurisdiction is not controlling. "The practice of joining an agent, employee or accomplice of a corporation as a party defendant is becoming more common every day. The device is frankly used by counsel as a method to defeat federal diversity jurisdiction and it often succeeds.  It succeeds because the federal courts of appeals have adopted rigorous standards governing the issue of fraudulent joinder." Fleming v. United Teachers Associates Ins. Co., 250 F.Supp.2d 658, 661 (S.D.W. Va. 2003).  The Court must remand the case unless Monsanto shows, by clear and convincing evidence, that there is no possibility Thompson can establish a cause of action against Galloway. Jackson, 132 F.Supp.2d at 433. Monsanto attempts to do so by arguing that Galloway owed no legal duty to Thompson, and, therefore, cannot be liable in tort to him (Dkt. No. 34 at 7).

To assert a cause of action for negligence, the plaintiff must prove by a preponderance of the evidence "that the defendant owed a legal duty to the plaintiff, and that by breaching that duty the defendant proximately caused the injuries of the plaintiff." Neely

v. Belk Inc., 668 S.E.2d 189, 197 (W. Va. 2008) (quoting Strahin v. Cleavenger, 603 S.E.2d 197 (W. Va. 2004)).  The defendant must be "guilty of some act or omission in violation of a duty owed to the plaintiff.  No action for negligence will lie without a duty broken." Parsley v. General Motors Acceptance Corp., 280 S.E.2d 703, 706 (W. Va. 1981).

Duty, however, is a flexible concept, and is "not absolute, but is always relative to some circumstance of time, place, manner, or person." Dicken v. Liverpool Salt & Coal Co., Syl. Pt. 1, 23 S.E. 582 (W. Va. 1895).  A person who "engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." Robertson v. LeMaster, Syl. Pt. 2, 301 S.E.2d 563 (W. Va. 1983).

Duty "is measured by the scope of the risk which negligent conduct foreseeably entails." Id. at 568.  The relevant inquiry is whether an ordinary person in the defendant's position, "knowing what he knew or should have known, [would have] anticipate[d] that harm of the general nature of that suffered was likely to result?" Sewell v. Gregory, Syl. Pt. 4, 371 S.E.2d 82, 85 (W. Va. 1988).

See also Bragg v. United States, 741 S.E.2d 90, 96-100 (W. Va. 2013) (discussing when a duty may be owed to a third party). An agent or employee can be "personally liable for his own torts against third parties"; an employee's personal liability "is independent of his agency or employee relationship." Musgrove v. Hickory Inn, Syl. Pt. 3, 281 S.E.2d 499 (1981).

The West Virginia Supreme Court of Appeals has stated that the Court's task is "not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but, rather, to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party." Neely, 668 S.E.2d at 198 (quoting Strahin, 603 S.E.2d at 206) (emphasis in original). "[T]he determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc., __ F.3d __, 2015 WL 1771537 at *3 (4th Cir. 2015) (quoting Lockhart v. Airco Heating & Cooling, Inc., 567 S.E.2d 619, 622 (W. Va. 2002) (internal quotation marks and citations omitted)).

MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 32] AND GRANTING MOTION TO DISMISS [DKT. NO. 9]

In Count Four of his complaint, Thompson asserts "Premises Owner Agent Liability" against Galloway (Dkt. No. 1-3 at 10). He alleges that Galloway "engaged in conduct in a negligent, willful and wanton disregard to [his] safety in the operation, maintenance, control, supervision, inspection, and regulation of the [plant]." Id. Galloway, as Superintendent of Environmental Health, Safety and Product Acceptability, "was involved in employee safety and loss prevention." Id. His responsibilities included "the Environmental Department, Plant Utilities, Safety, Industrial Hygiene, Medical Department and Product Acceptability." (Dkt. No. 1-1 at 1).

Thompson specifically alleges that Galloway required or permitted him to perform his job duties in areas where he would be exposed to high levels of benzene without any warning or proper safety or respiratory equipment, and that he failed to adequately monitor the environment and institute safety rules and standards (Dkt. No. 1-3 at 11-12).

Galloway argues that his job description as Superintendent of Environmental Health, Safety and Product Acceptability did not include "the control or supervision of truck drivers delivering product" to the Monsanto plant (Dkt. No. 9 at 6). Another

individual at the plant, the Superintendent of the Services Department, was responsible for third parties delivering product. Id. at 6-7. Galloway neither supervised nor controlled third party truck drivers delivering product to the plant (Dkt. No. 9-1 at 2). Furthermore, third parties like Thompson were not permitted to unload inside the plant. Rather, the job of unloading fell upon Monsanto employees. Id. Based on this, Galloway contends that he did not owe a duty to Thompson, and the Court must dismiss the complaint against him as a matter of law (Dkt. No. 9 at 6-7).

Thompson argues that Galloway reads the complaint "too narrowly," and insists that a duty exists between Galloway and himself due to Galloway's "negligent performance of management of safety and industrial hygiene," which was part of Galloway's job duties (Dkt. No. 30 at 5; Dkt. No. 1-1 at 1; Dkt. No. 38 at 2). He offers the testimony of Rancel Jividen, an employee at the Monsanto facility in Nitro, who recalls that Galloway "established health and safety policies that applied to the entire Nitro facility," and "monitored compliance with the policies." (Dkt. No. 38 at 3-4). Finally, he argues that Galloway's supervision of industrial hygiene at the Nitro facility encompassed all environmental factors or stressors that could cause sickness or impair health among

either employees or members of the community, including him.  Id.
at 3.

Thompson's allegations against Galloway must be measured by
the scope of the risk Galloway allegedly created, as pleaded in the
complaint.  Robertson, Syl. Pt. 2, 301 S.E.2d at 568.  The plain
language of the complaint only includes allegations that Galloway
negligently performed his job duties as Superintendent of
Environmental Health, Safety and Product Acceptability (Dkt. No. 1-
3 at 16-17).   The  Court  therefore  rejects  Thompson's
unsubstantiated assertion that West Virginia common law somehow
imposes a separate duty on Galloway "to exercise reasonable care in
not exposing Mr. Thompson to the dangers of chemical exposures in
Monsanto's workplace." (Dkt. No. 30 at 4).[5]  Such a duty, if one
indeed exists, stems solely from Galloway's job duties, as Thompson
has failed to plead any acts or omissions on the part of Galloway
apart from or in addition to his role as Superintendent.

The Court must also look to whether the category of negligent
conduct allegedly undertaken by Galloway is "sufficiently likely"

---

[5] Of course, an agent or employee can still be liable to a
third party like Thompson for his own torts.  Musgrove, Syl. Pt. 3,
281 S.E.2d at 499.  Thompson, however, has failed to plead any
facts showing that Galloway negligently acted or failed to act,
other than within the scope of his job duties.

to result in the category of harm allegedly suffered by Thompson, such that liability may be imposed on Galloway.  <u>Neely</u>, 668 S.E.2d at 198 (quoting <u>Strahin</u>, 603 S.E.2d at 206)(emphasis omitted). After careful consideration, it concludes that the type of conduct undertaken by a supervisor in Galloway's position is not sufficiently likely to cause the type of harm suffered by a third party like Thompson.

In this regard, the case of <u>Evans v. K-VA-T Food Stores, Inc.</u>, 2013 WL 1639414 (S.D.W. Va. Apr. 16, 2013) (Copenhaver, J.), is instructive.  There, the plaintiff, a West Virginia citizen, filled a prescription at a pharmacy in a Food City store in South Williamson, Kentucky.  <u>Id.</u> at *1.  The pharmacy technician improperly added 30 milliliters of a drug into the plaintiff's prescription, rather than the required 5 milliliters, an error that resulted in severe and permanent injuries.  <u>Id.</u>  The plaintiff filed suit in the Circuit Court of Mingo County, West Virginia, against Food City and Donald Sansom ("Sansom"), the assistant manager of the store, alleging that Sansom was "negligent and careless in his duty to supervise and oversee the agents of the Defendant, Food City," and that he "negligently allowed the improperly filled prescription to be distributed to the Plaintiff."

14

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 32] AND GRANTING MOTION TO DISMISS [DKT. NO. 9]**

Id.  K-VA-T Food Stores, Inc., d/b/a Food City, is a foreign corporation with its principal place of business in Kentucky, and Sansom is a citizen of West Virginia.  Id.

The defendants removed the case to federal court, alleging that Sansom, the sole non-diverse defendant, had been fraudulently joined.  Id. at *2.  The plaintiff filed a motion to remand on the ground that the defendants had failed to establish fraudulent joinder.  Id.  The pharmacist at Food City testified that she, and the other pharmacy employees, usually reported to the manager of Food City, Susan Maynard, rather than Sansom, although they could report to Sansom if he was present at the store.  Id. at *1. Importantly, Sansom did not "have any responsibility for the management of the professional pharmacy aspect" of the business. Id. at *2.

The United States District Court for the Southern District of West Virginia agreed that the plaintiff's negligence claim against Sansom was untenable because he never had any supervisory or oversight responsibility over the professional pharmacy.  Id. at *3-4.  "It is uncontroverted that the Food City store management, including Sansom as the assistant manager, had no responsibility for the execution or management of the pharmacy's professional

activities.  Absent such a role, Sansom could not have owed or broken any duty to [the plaintiff] with respect to her improperly filled prescription." Id. at *4.  That court concluded that the plaintiff had no possibility of relief against Sansom, the sole non-diverse defendant, and dismissed him from the case. Id. at *5.

Taking all of the facts in Thompson's amended complaint as true, a supervisor in Galloway's position, with responsibility over the safety and environmental health of the plant, but with no responsibility over third party truck drivers delivering product to the plant, would not be expected to cause or foresee injury to third party truck drivers who simply deliver product to the plant, without ever stepping foot inside to unload it.  See Dkt. No. 9-1 at 2.  Significantly, Thompson does not contest that he did not unload his truck inside Monsanto's plant, as related by Galloway in his affidavit (Dkt. Nos. 34, 38).[6]

_____

[6] In Count Three of Thompson's complaint, alleged only against Monsanto, and not against Galloway, he pleaded that, "[t]hroughout the course of his employment, [he] entered the Premises Owner Defendants' facilities." (Dkt. No. 1-3 at 14).  Taking that fact as true, as the Court must, it is not inconsistent with Galloway's account that truck drivers drove onto Monsanto's facility, but were not permitted to enter the actual plant or unload their trucks. Furthermore, although Thompson had two occasions after Galloway filed his affidavit to refute Galloway's assertion that Thompson had never entered the plant or unloaded his truck, he failed to do so (Dkt. Nos. 34, 38).

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO REMAND
[DKT. NO. 32] AND GRANTING MOTION TO DISMISS [DKT. NO. 9]**

As in <u>Evans</u>, a supervisor like Galloway simply could not foresee harm to truck drivers like Thompson who delivered chemicals which were then unloaded by Monsanto employees. Just as Sansom's responsibilities as assistant manager did not encompass the professional duties of the pharmacy, Galloway's responsibilities as Superintendent did not encompass third party truck drivers' duties to haul product to the plant. Therefore, the Court concludes that Thompson has no possibility of relief against Galloway under West Virginia law, and that diversity jurisdiction lies. <u>Jackson</u>, 132 F.Supp.2d at 433.

<u>CONCLUSION</u>

For the reasons discussed, the Court **DENIES** Thompson's motion to remand (Dkt. No. 32), **GRANTS** Galloway's motion to dismiss (Dkt. No. 9), and **DISMISSES** Galloway from the case.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: April 24, 2015.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE